UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE:

    CHEN, ZHEN,                          Case No. 07-51734
                                        Chapter 7
        Debtor.                       Hon. Walter Shapero
_____/

LI, BING,

    Plaintiff,

v.                                                            Adv. Pro. No. 07-06769

CHEN, ZHEN,

    Defendant.
_____/

## **OPINION REGARDING DENIAL OF DISCHARGE**

This adversary proceeding involves a complaint under § 727(a)(4)(A) filed by Bing Li ("Creditor") against Zhen Chen ("Debtor"). For the reasons set forth in this opinion, the Court concludes the Debtor is denied a discharge.

### JURISDICTION

The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

### BACKGROUND AND FACTS

Debtor filed her voluntary chapter 7 petition, Schedules of Assets and Liabilities, and Statement of Financial Affairs on June 15, 2007. In her petition, debtor listed her address as

1

30730 Delton, Madison Heights, Michigan ("Delton"). In November 2004, Debtor and her current husband, Xian Zhong Wang, had purchased Delton, which actually encompasses two separate abutting lots. On December 9, 2005, they transferred one of the two lots (the one commonly known as 30722 Delton) by warranty deed to Creative Land Development, Inc. Debtor testified that this transfer was necessitated by an error made by the title company. Debtor did not list that transfer in Section 10 of her Statement of Financial Affairs.

Prior to the purchase of Delton in 2004, Debtor lived at 4260 Cactus Drive, Troy, Michigan ("Cactus"). Debtor and her prior husband, Jian Cheng Chen, had divorced in 1995. Debtor, acting as attorney-in-fact for that ex-husband, signed the documents effectuating his purchase of Cactus in 2003. On May 29, 2003, Debtor signed a mortgage in favor of Washington Mutual on Cactus, both as attorney-in-fact for her ex-husband and as his wife. Debtor did not list the Washington Mutual mortgage in her Schedules. Debtor testified that, because of her difficulty with the English language, she did not understand that she was signing as Jian Cheng Chen's wife on the Washington Mutual mortgage, in addition to signing as his attorney in fact.

Debtor testified that she moved from the Cactus property to the Delton property in 2005, and that between 2005 and 2008 she lived at Cactus on some days and at Delton on others. She further testified that she traveled between the two properties in order to take care of her two children with her ex-husband who reside at Cactus . Debtor did not list Cactus as a prior address in Section 15 of debtor's Statement of Financial Affairs

From 2001 until 2006, the debtor and Zeng Di Cue were the owners of Taiwan Buffet, L.L.C. ("Taiwan Buffet"), which operated as a Chinese restaurant in Madison Heights,

Michigan. Debtor did not list any interest in Taiwan Buffet in Section 18 of her Statement of Financial Affairs or on Schedule B.

In January 2006, Plaintiff, Bing Li, after reviewing documents supplied to him reflecting January 2006 profits, invested $183,000.00 in exchange for a 60% interest in Taiwan Buffet. In August 2006, Mr. Li instituted an action against Debtor and Zeng Di Cue in state court alleging fraud, claiming that he had been fraudulently induced into purchasing the interest in Taiwan Buffet, alleging the January 2006 financial documents he had been shown incident to the purchase were false and inaccurate. Pursuant to negotiations between the parties incident to that state court action, Taiwan Buffet was sold to a third party on September 29, 2006 for $100,000.00. That sum was agreed to be held in escrow by the Debtor's attorney at the time, Jerry Tian Lee. On October 10, 2006, Ms. Chen and Ms. Cue filed a Motion for Dissolution and Releasing Escrow for Urgent Funds in the state court claiming that access to the escrow fund was necessary to pay Taiwan Buffet creditors. This motion was denied because the moving party twice failed to appear. At a deposition held on February 6, 2007, it became known that approximately $60,000.00 of the escrow funds had in fact actually been disbursed by Jerry Tian Lee contrary to the escrow agreement of the parties and despite the state court's denial of the motion to disburse funds. At some point, Bing Li filed a state court Motion to Strike Defendants' state court Pleadings and for Entry of a Default Judgment as a Sanction for Defendants' Violation of the Court's Orders. On March 7, 2007, the state court Judge granted Bing Li's motion and entered a Default Judgment jointly and severally against Debtor and Ms. Cue in the amount of $183,000.00.

As noted, it appears that, of the $100,000.00 held in escrow by Jerry Tian Lee,

3

07-06769-wsd    Doc 56    Filed 12/28/09    Entered 12/28/09 16:01:51    Page 3 of 13

approximately $60,000.00 had been disbursed.  Debtor testified that Jerry Tian Lee gave her and her partner, Ms. Cue, $7,500.00 each, which they in turn ended up giving to Bing Li. In addition, approximately $6,000.00 was disbursed to Jerry Tian Lee for attorney fees. The remainder of the $60,000.00 is unaccounted for, as is the $40,000.00 which was not disbursed. Debtor testified that the remaining monies were paid to Taiwan Buffet's creditors.

East Sea Buffet, Inc. ("East Sea Buffet"), a new entity, came into existence and operated the business at the former Taiwan Buffet location following the September 29, 2006 sale.  On February 26, 2007, Ben T. Liu, an attorney acting on behalf of East Sea Buffet, wrote a letter to East Sea Buffet's landlord, Stuart Frankel Development Company, apparently in response to the landlord's concerns about the change in the restaurant's name and sign.  This letter stated that the restaurant name was changed to attract new business and that Debtor, Pik Tuen Lau, and Shao Fang Wang were the tenants and current shareholders.  The letter further stated that Debtor continued to be a 50% owner of the restaurant and copies of stock certificates and Corporate Consent Resolutions reflecting those facts were enclosed with the letter. The stock certificate shows that as of February 26, 2007, Debtor owned 100 of the 200 authorized shares of East Sea Buffet.  This stock certificate was apparently, for some unknown reason, thereafter cancelled on February 28, 2007.  A Consent Resolution, dated February 26, 2007, listed Debtor as East Sea's president.  Debtor testified that she did not truly own an interest in East Sea Buffet and the letter was sent merely to satisfy the landlord's concerns and to ensure that the lease, for which she remained responsible, would continue to be paid. Debtor testified that she did not inform the landlord that her stock certificate had been cancelled.  Debtor did not list any interest in East Sea Buffet in Section 18 of her Statement of Financial Affairs.

4

Debtor testified that she was active in the management and operation of East Sea Buffet on occasion. A witness, Wen You, testified that the debtor received approximately $4,800 monthly for rent and salary from February 2007 until November 2007 (though Debtor testified that she did not receive any salary from East Sea, nor did she list any income from East Sea Buffet in Section 1 of her Statement of Financial Affairs). During this time period, several East Sea Buffet employees lived at debtor's Delton property. Debtor testified that East Sea Buffet made mortgage payments on her Delton property in February, March, April, and June 2007 and paid utility bills on that property in March and April 2007. Debtor did not list the mortgage payments or utility bill payments as income or receipts in Section 2 of her Statement of Financial Affairs, testifying that she did not consider such to have been income to her personally.

## DISCUSSION

Creditor filed this adversary proceeding against Debtor on December 6, 2007, later amending the complaint. The complaint asserts Objection to Discharge under 11 U.S.C. § 727(a)(4)(A) and Exemption of the debt from Discharge under 11 U.S.C. § 523(a)(2) and (a)(4).

A. *Objection to Discharge under § 727(a)(4)(A)*

The Creditor argues denial of discharge under § 727(a)(4)(A) because Debtor made knowing and fraudulent false oaths or accounts, pointing to the various misstatements and omissions in Debtor's Schedules and Statement of Financial Affairs, outlined above and detailed below.

Section 727(a)(4) requires that

> a plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement

5

was false; (4) the debtor made the statement with fraudulent intent; and (5) the
statement related materially to the bankruptcy case. Whether a debtor has made a
false oath under §727(a)(4)(A) is a question of fact.

*Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir. 2000). "Under this section, an omission alone from the debtor's statement of affairs or schedules is grounds for denying a discharge. If a debtor fails to fully provide information that is required, the debtor will be denied a discharge under § 727(a)(4)." *Stevenson v. Cutler (In re Cutler)*, 291 B.R. 718, 725 (Bankr. E.D. Mich. 2003) (internal quotation marks and citations omitted).

First, the Creditor alleges that the Debtor failed to disclose her prior address in her Schedules or Statement of Financial Affairs. Despite Debtor's testimony at trial, where she clearly acknowledged that she had lived at the Cactus property within the last three years, the Cactus property was not mentioned as a prior address in her Statement of Financial Affairs, Section 15 of which specifically requires such a disclosure, or in her Schedules.

Second, Creditor alleges that the Debtor failed to disclose her interests in Taiwan Buffet and East Sea. Section 18 of the Statement of Financial Affairs requires the following information to be disclosed if the debtor is an individual:

> List the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner or managing executive of a corporation, partnership, sole proprietorship . . . or in which the debtor owned 5% or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

Despite the Debtor's testimony at trial, where she clearly acknowledged that she was a 50% shareholder in Taiwan Buffet from 2001 until 2006, her interest in Taiwan Buffet was not mentioned as a business in which she was an owner and officer. Debtor's attorney argued that

6

this question was answered incorrectly but the interest was in fact disclosed to the Trustee during the 341 Meeting of Creditors. However, no amendment reflecting that interest was ever filed.

In addition, Debtor did not disclose in Section 15 her interest in East Sea. The evidence indicates that Debtor at one time held an interest in East Sea Buffet, i.e., the letter written by Ben T. Liu to Stuart Frankel Development Company, a copy of a stock certificate, and a copy of the Corporate Consent Resolution, which at least show that as of February 26, 2007, Debtor was a 50% shareholder and president of East Sea.

Debtor testified that these documents were given to the landlord in order to remedy a dispute regarding the fact that the restaurant's sign had been changed. She claims that she did not truly own an interest in East Sea Buffet. Debtor introduced a copy of a voided stock certificate dated February 28, 2007 as evidence that she did not own an interest in the company, but admitted that she did not tell the landlord that her stock certificate had been voided.

Even more troubling is Debtor's response to questioning regarding why these documents exist and why they show that she was an owner of an interest in East Sea Buffet. Either Debtor was an owner of East Sea Buffet or she misrepresented that she was an owner so that the landlord would allow the lease to continue. On paper, it is clear that Debtor at one time owned an interest in and was president of East Sea Buffet; however, she did not disclose this interest in Section 18 of the Statement of Financial Affairs.

Third, Creditor alleges that the Debtor failed to disclose in her Schedules or Statement of Financial Affairs the fact that she transferred the property at 30722 Delton by warranty deed to Creative Land Development, Inc on December 9, 2005. Section 10 of the Statement of Financial Affairs requires that Debtors list all property, other than property transferred in the ordinary

7

course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of the bankruptcy. Despite the Debtor's acknowledgment of the transfer, it was not mentioned as a transfer of property in response to this question. When asked about it, Debtor stated that the transfer was necessary due to a mistake made by the title company and that she did not receive any money in the transaction, apparently offering that as the reason for non-disclosure.

Fourth, Creditor alleges that the Debtor failed to disclose in her Schedules or Statement of Financial Affairs income she received from East Sea Buffet in the form of payments to her mortgage company. Section 2 of the Statement of Financial Affairs requires that Debtors state the amount of income received other than from employment, trade, profession, operation of the debtor's business during the two years immediately preceding the commencement of the bankruptcy. The evidence is that the Delton mortgage payments were made by East Sea Buffet in February, March, April, and June 2007, and that Debtor did not disclose them. Apparently, Debtor considered those payments to be some sort of rent. East Sea Buffet also paid or utility bills in March and April 2007; likewise, these amounts were not disclosed.

In addition, Debtor admitted at trial that her claimed monthly expenditure for clothing for her family was inaccurate and failed to give any explanation as to why it was inaccurate. Debtor listed on Schedule J a monthly expenditure for clothing for her family as $500.00 per month. Debtor admitted that her actual expenditure for clothing is $300.00 per month.

It is thus clear in this case that there were numerous mistakes and omissions contained in the Debtor's bankruptcy Schedules and Statement of Financial Affairs. Those inaccuracies and omissions were made under oath. The question, however, is whether these false oaths were

8

made with a knowing intent to defraud creditors. As in most cases where there are allegations of fraudulent intent by a debtor, there is no <u>direct</u> testimony on that point. However, recognizing this fact, other courts have found a fraudulent intent from circumstantial evidence when there are numerous errors and omissions in the debtor's schedules of assets and liabilities and statement of financial affairs.

> Under section 727(a)(4), a fraudulent statement must be made with a knowing intent to defraud creditors. Deliberate omissions from the schedules may constitute false oaths and result in the denial of discharge. . . . However, since defendants will rarely admit their fraudulent intent, actual intent may be inferred from circumstantial evidence. A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive. On the other hand, the discharge is not to be denied when the untruth was the result of mistake or inadvertence.

*Stevenson v. Cutler (In re Cutler)*, 291 B.R. 718, 726 (Bankr. E.D. Mich. 2003).

In determining whether to infer an intent to deceive from a debtor's mistakes and omissions in schedules and statement of financial affairs, the *Cutler* court also focused on the affirmative duties of disclosure that are the cornerstone of the bankruptcy process. According to the Sixth Circuit, " '[a] debtor has an affirmative duty to disclose all of its assets to the bankruptcy court[.]'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002), *quoted In re Cutler*, 291 B.R. at 726. Courts have found that debtors have a "paramount duty" and a "strict obligation" to truthfully, accurately, and completely answer questions in their schedules and statement of financial affairs, and debtors must complete their schedules with "candor, accuracy, and integrity." *In re Cutler*, 291 B.R. at 726 (citations omitted).

The Court finds that the Debtor failed to meet her affirmative duty to disclose information to the Trustee. She is the individual who petitioned for relief. The burden is on her to be forthcoming with information. It is no answer for the debtor to now say that these

9

businesses, assets, and income were of little value or that she did not think that she needed to disclose them. That is not a judgment call that the law permits a debtor to make. "The Debtor must answer all questions contained in the Schedules and Statement of Financial Affairs fully and candidly, so that the Trustee can determine whether there is an asset of value to administer for the benefit of the estate and creditors can have a full and accurate picture of the Debtor's financial condition." *Lewis v. Summers (In re Summers)*, 320 B.R. 630, 642 (Bankr. E.D. Mich. 2005).

The Debtor contends, however, that what occurred were mistakes and omissions, which cannot form the basis for a finding of intent to deceive. First, regarding the income received when East Sea Buffet paid her mortgage, Debtor argues that such arrangements are common in the Chinese immigrant community and that her failure to mention these arrangements cannot be seen as an attempt to "hinder, delay, or defraud a creditor." The Court rejects this argument. It is a debtor's duty to simply and candidly answer the questions on the Schedules and Statement of Financial Affairs. Instead of disclosing the basic facts the Schedules require, Debtor made judgments about the meaning, effect, or consequences of those basic facts, i.e.: whether the payments by the business of the mortgage and utilities on her home were or were not "income" for some purpose, or whether a transfer to correct a "mistake" is or is not a reportable transfer. Rather, it is up to a trustee or creditors to draw whatever conclusions should be drawn from the basic facts that are required to be disclosed and then deal with them in the bankruptcy context. Although the money was not handed directly to the Debtor, she received the benefit of those payments and she should have disclosed each of those payments and left others to decide their nature or consequence.

Second, Debtor argues that she should not be denied a discharge because of any false oaths because some of the information that she omitted was later disclosed by her to the Trustee during the 341 Meeting of Creditors. Debtor claims that she disclosed the mortgage payments made by East Sea Buffet and her interest in Taiwan Buffet during the 341 Meeting of Creditors. However, other than self-serving testimony by debtor's counsel, Debtor did not provide any evidence at trial that would tend to demonstrate that she disclosed this information during the 341 Meeting of Creditors. Even if these disclosures had been made, it is not acceptable for the Debtor to say that she eventually disclosed the information. To accept the Debtor's argument that answering questions truthfully at the 341 Meeting of Creditors absolves one of fully answering the questions in the Schedules and Statement of Financial Affairs would render the latter meaningless. *See In re Colvin*, 288 B.R. 477 (Bankr. E.D. Mich. 2003).

This Court was left with the firm impression from the Debtor's testimony that she was, at best, cavalier in her treatment of the Schedules and Statement of Financial Affairs and, in some instances, deliberate in withholding information. Although any one of the specific inaccuracies in the Schedules and Statement of Financial Affairs may not by itself seem material, the cumulative effect of these misstatements gives rise to an inference in this case that the Debtor knowingly and fraudulently made a false oath or account (or what she did or said, or failed to do or say is indicative of a pattern, and is tantamount to such). *See In re Cutler*, 291 B.R. at 726 ("A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive."). Accordingly, the Court will deny the Debtor a discharge under § 727(a)(4)(A).

11

Although the Court realizes that denial of discharge may appear to be a harsh result, the "Schedules and Statement of Financial Affairs filed by a debtor are the core of all bankruptcy cases, upon which creditors, the courts, and other interested parties rely." *In re Summers* at 643. *See Cohen v. McElroy (In re McElroy)*, 229 B.R. 483, 488 (Bankr. M.D. Fla. 1998) ("A debtor's complete disclosure is essential to the proper administration of the bankruptcy estate. This disclosure serves the purpose of providing reliable information to those with an interest in the bankruptcy estate, who are entitled to a truthful statement of the debtor's affairs." (citations omitted); *In re Hyde*, 222 B.R. 214, 218 (Bankr. S.D. N.Y. 1988) ("The obligation of full disclosure is crucial to the integrity of the bankruptcy process.), *rev'd on other grounds*, 235 B.R. 539 (S.D. N.Y. 1999); *Van Roy v. Watkins (In re Watkins)*, 84 B.R. 246, 250 (Bankr. S.D. Fla. 1988) ("The veracity of the [debtor's] statements is essential to the successful administration of the Bankruptcy Code.") (citations omitted). "The Court cannot condone the filing of slipshod schedules by a debtor who dismisses his paramount responsibility to be candid, accurate, and honest as a mere formality to be corrected later if it suits her, or not at all. The bankruptcy system simply could not function were this cavalier attitude accepted." *In re Summers* at 644.

*B. Exemption from Discharge under § 523(a)(2)(A) or § 523(a)(4)*

Next, the Creditor argues that his claim should be exempted from discharge under § 523(a)(2)(A) or § 523(a)(4). Because the Debtor is denied her discharge, it is unnecessary for this Court to decide the Creditor's request for a nondischargeable judgment under 523(a)(2)(A) and/or § 523(a)(4).

## CONCLUSION

07-06769-wsd    Doc 56    Filed 12/28/09    Entered 12/28/09 16:01:51    Page 12 of 13

For the reasons set forth in this opinion, the Court concludes that Zhen Chen should be denied a discharge under § 727(a)(4)(A) of the Bankruptcy Code. The Court will enter an order consistent with this opinion.

**Signed on December 28, 2009**

                                                   **/s/ Walter Shapero**
                                       **Walter Shapero**
                                       **United States Bankruptcy Judge**